**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-10561
(Summary Calendar)

KNOWLES PUBLISHING,

Plaintiff-Appellant,

versus

AMERICAN MOTORISTS INSURANCE CO.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(4:99-CV-534-G)

January 25, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Knowles Publishing ("Knowles") appeals from a denial of a motion to remand to the Texas

state district court from which it was removed and the district court's grant of summary judgment

in favor of American Motorists Insurance Company ("AMICO") because it determined that AMICO

had no duty to defend Knowles in a previous lawsuit under its insurance policy. Because the district

court did not err, we affirm.

---

[*] Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

FACTUAL AND PROCEDURAL HISTORY

On July 31, 1997, Missy Darlene Caddell ("Caddell") filed suit in state district court against Knowles, alleging that it negligently hired, trained, supervised, and retained an employee, Matt Harnes ("Harnes"), who unlawfully discriminated against Caddell, intentionally caused her emotional distress, assaulted, battered, and falsely imprisoned her. The suit claimed sexual discrimination and harassment. In particular, Caddell claimed that Harnes grabbed her on two occasions, once in the presence of a co-worker. She also claimed that on a third occasion, Harnes brushed his body against the front of her body so that her breasts touched his body. Caddell also alleged in the petition that she informed her supervisor at Knowles about the harassment on several occasions but that Knowles failed to stop the harassment. As damages, Caddell claimed 1) future and reasonable and necessary medical, psychological, and/or psychiatric expenses; 2) past and future mental anguish; 3) past and future loss of wages and wage earning capacity; 4) attorney's fees; and 5) exemplary damages. Caddell also responded to an interrogatory that her lost wages amounted to $5,856.00. However, the court in the Caddell lawsuit signed a judgment in favor of Knowles on December 20, 1999.

On May 20, 1999, Knowles filed suit in state district court against AMICO seeking reimbursement of defense costs and indemnity in connection with the Caddell case. Knowles' petition alleged, in part, breach of contract, unfair insurance practices, deceptive trade practices, and breach of good faith and fair dealing. It claimed as damages, in part: 1) attorney's fees; 2) compensatory damages for economic loss; 3) exemplary damages as a result of the knowing, willful, intentional and malicious acts of AMICO; and 4) additional damages authorized by TEX. INS. CODE ART. 21.21, § 16(b)(1) AND TEX. BUS. AND COM. CODE § 17.50(b)(1) ("Texas Deceptive Trade Practices Act" or "DTPA") that authorizes treble damages "[i]f the trier of fact finds that the conduct was committed

2

knowingly, . . . [it] may award not more than three times the amount of economic damages" for deceptive trade practices or "the use or employment by any person of an act or practice in violation of Art. 21.21, Insurance Code." TEX. BUS. AND COM. CODE § 17.50(b)(1), § 17.50 (a)(4). On July 6, 1999, AMICO filed a Notice of Removal, alleging federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Knowles moved to remand jurisdiction on the grounds that there was an insufficient amount in controversy to support federal subject matter jurisdiction. The district court denied that motion on December 13, 1999. Subsequently, AMICO moved for summary judgment, and Knowles filed a cross motion for summary judgment on the issue of AMICO's duty to defend Knowles in the Caddell suit. The district court granted AMICO's motion and denied Knowles' motion on April 26, 2000. Knowles now appeals the denial of its motion to remand and its motion for partial summary judgment.

DISCUSSION

I.      Amount in Controversy

This Court reviews de novo a denial of a motion to remand to state court. Rodriguez v. Sabatino, 120 F.3d 589, 591 (5th Cir. 1997). Federal courts may exercise jurisdiction on the basis of diversity of citizenship if the plaintiff does not share citizenship with the defendant and the case involves an amount in controversy of at least $75,000. 28 U.S.C. § 1332(a).

When the plaintiff's state court petition does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000 in order to establish jurisdiction. See Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995) (citing DeAguilar v. Boeing Co., 11 F.3d 55, 58) (5th Cir. 1993) (noting that at

3

the time the amount in controversy necessary to establish federal subject matter jurisdiction for diversity purposes was $50,000). The court will then determine if removal was proper by first determining whether the amount is "facially apparent" from the state court petition that the claims exceed $75,000. Id. If the amount is not facially apparent, "a removing attorney may support federal jurisdiction by setting forth the *facts* in controversy - preferably in the removal petition, but sometimes by affidavit- that support a finding of the requisite amount." Id. (emphasis not added). "Removal, however, cannot be based simply upon conclusory allegations." Id. Moreover, "the jurisdictional facts that support removal must be judged at the time of the removal. . ." Id. Finally, if a defendant shows by a preponderance of the evidence that the amount in controversy exceeds $75,000, removal is proper unless the plaintiff shows that "it is legally certain that his recovery will not exceed the amount stated in the state complaint." DeAguilar v. Boeing Co., 47 F.3d 1404, 1411-12 (5th Cir. 1995).

In denying Knowles' motion to remand, the district court relied on the claims asserted in Knowles' and Caddell's state court petitions, as well as an affidavit from AMICO's attorney stating that the cost to defend the lawsuit against Caddell was up to $12,000 and that the most recent settlement demand issued by Caddell in her lawsuit against Knowles greatly exceeded $75,000.[1] It also relied on Caddell's response to an interrogatory that her lost wages amounted to $5,856.00. Noting that Knowles sought trebled damages under the DTPA, the district court estimated

---

[1]The court also relied on Knowles' refusal to stipulate that the amount in controversy does not exceed $75,000, stating that this refusal indicated that the actual amount in controversy exceeded $75,000. See DeAguilar, 47 F.3d at 1412. Because we affirm on other grounds, we decline to elaborate on this issue. Knowles also contends that AMICO incorrectly argued that Knowles' designation of this case as Level 2, indicating that the amount in controversy is at least $50,000, is also an indicator that the amount exceeds $75,000. Knowles, however, concedes that the district court did not rely on this argument in its memorandum opinion. Hence, we pretermit this discussion.

$53,568.00 as the minimum amount of damages by combining the $12,000 in attorney's fees stated in the affidavit and the $5,856.00 in Caddell's lost wages and trebling that figure. It then noted that the figure did not even comprehend a jury award of damages for mental anguish and exemplary damages, in addition to the exemplary damages and attorney's fees in the instant suit.

Knowles argues, in particular, that the affidavit's statement regarding the settlement demand is unreliable because it is mere "puffing," a normal part of the settlement process. Knowles also asserts that the statements in the affidavit regarding the settlement demand and the attorney's fees are hearsay and mere conclusory statements and may not act as evidence of the jurisdictional amount. Furthermore, Knowles contends that the list of damages sought by Knowles in its petition does not facially assert proof of the requisite jurisdictional amount. It states that this list included conclusory statements and that AMICO offers no evidence of cases involving similar injuries.

Reviewing the instant case de novo, we agree with the district court's holding that AMICO proved by a preponderance of the evidence that the amount in controversy exceeds $75,000. Even if the district court erred when it relied on the affidavit's statement regarding the most recent settlement demand, the remaining evidence, primarily the assertions of Knowles' and Caddell's petitions, the affidavit's statements regarding the attorney's fees, and Caddell's responses to the interrogatory, amply support the district court's determination that the jurisdictional amount was satisfied.

First, the district court did not err when it relied on the facial assertions of Knowles' and Caddell's petitions, since this Court reviews the jurisdictional amount at the time of removal. The time of removal here included Caddell's petition because judgment was not rendered in her suit until almost six months after AMICO moved to remove the case to federal court. Second, the district

court did not err when it relied on the affidavit from AMICO's attorney to calculate an approximation of the amount in controversy, as this Court has clearly expressed that a removing attorney may also rely on affidavits. See Allen, 63 F.3d at 1335. Thus, although the affidavits may be hearsay or are conclusory statements as Knowles argues, this circuit's precedent indicates that they are admissible for proving the amount in controversy necessary for federal subject matter jurisdiction.

Third, Knowles asserts that the claims alleged in its and Caddell's petitions are conclusory statements and are not facially apparent of the $75,000 requirement. It supports this argument by comparing the petitions to those in Allen and DeAguilar. It, however, fails to respond to AMICO's citation of caselaw in which courts have held that petitions alleging similar claims facially asserted the federal diversity jurisdictional requirement. See, e.g. Sorensen v. Ashmore, 4 F. Supp. 2d 669, 670 (E.D. Tex. 1998); Chittick v. Farmers Ins. Exch., 844 F. Supp. 1153, 1155 (S.D. Tex. 1994). Moreover, although Allen involved 512 plaintiffs and DeAguilar sought damages for different claims, including wrongful death and terror in anticipation of death and on those bases, this circuit determined that the petitions facially asserted the proper amount in controversy, such arguments have little bearing on the case before us. Though the present case involves only one or two plaintiffs for harms arising out of sexual harrassment and gender discrimination and the defense against those claims, it does not mean ergo that the petitions do not facially assert the requisite jurisdictional amount. As the district court properly noted, Knowles' petition sought treble damages under the DTPA in its suit for AMICO's allegedly knowing acts in being unwilling to defend and indemnify it in Caddell's suit. Based on the concrete figures the district court compiled, in addition to the laundry list of other damages facially asserted in Caddell's and Knowles' state petitions, it is clear that AMICO proved that the petitions, in tandem with the raw numbers stated in the affidavit and

6

Caddell's response to the interrogatory, indicate more likely than not that the $75,000 jurisdictional minimum was satisfied.

Finally, as AMICO correctly states in its brief, Knowles does little to rebut the district court's conclusion that the jurisdictional requirement was satisfied. Instead of proving to a legal certainty that its recovery will not exceed the amount stated in its and Caddell's state petitions, Knowles rehashes the arguments it asserted in its motion to remand. Because we find, therefore, that AMICO proved by a preponderance of evidence that the jurisdictional amount in controversy requirement is satisfied, removal is proper. See supra pp. 3-4.

II.    Duty to Defend

The district court granted AMICO's motion for summary judgment on the issue of whether it had a duty to defend Knowles in the Caddell lawsuit under the Commercial General Liability ("CGL")[2] provisions of Knowles' insurance policy with AMICO. It held that AMICO had no such duty under the Employment-Related Practices Exclusion section of the policy [3] and that although the policy covered false imprisonment, a claim alleged in Caddell's petition, there were no facts giving rise to this claim, as stated within the complaint.

This Court reviews grants of summary judgment de novo. Krim v. BancTexas Group, Inc., et al., 989 F.2d 1435, 1444 (5th Cir. 1993). The moving party for summary judgment must show that

---

[2]The district court also granted summary judgment on this issue regarding the Workers Compensation and Employers Liability section of the policy. This basis of the grant of summary judgment is, however, not argued on appeal.

[3]Because we find that AMICO had no duty to defend, we decline to address this ancillary issue.

7

"there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). In response, the non-movant must "go beyond the pleadings and her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts" showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). Lastly, this Court should regard the evidence in the light most favorable to the nonmovant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 535 (1986).

"Texas courts do not look to conclusory assertions of a cause of action in determining a duty to defend. Instead, they look to see if the facts giving rise to the alleged actionable conduct, as stated within the eight corners of the complaint, constitute a claim potentially within the insurance coverage." Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80, 85 (5th Cir. 1997) (citing Adamo v. State Farm Lloyds Co., 853 S.W.2d 673 (Tex.App.-Houston 1993, writ denied)). As the district court correctly noted, although Caddell's petition makes an explicit allegation of false imprisonment, which is specifically covered by the CGL portion of Knowles' insurance policy with AMICO, the facts as stated within the "eight corners" of Caddell's petition do not so constitute a legitimate claim for false imprisonment.

"Texas law defines false imprisonment as willful detention without consent and without authority of law." Id. Yet, as Cornhill makes clear, it is of little use to allege a claim of false imprisonment, when the facts alleged in the complaint do not allege detention without consent and without authority of law, such as under threat of physical force or physical force itself. Knowles, however, counters that Caddell's claims of being grabbed by Harnes on two occasions and his body brushing up against hers constitutes detainment or restraint. "Grabbing" and "brushing" against a

8

person, however, are far cries from detaining that person. Thus, a de novo review of this issue indicates that the district court did not err when it denied Knowles' motion for partial summary judgment and granted AMICO's motion for summary judgment.

## CONCLUSION

Because we find that the district court did not err when it denied Knowles' motion to remand and when it granted summary judgment in favor of AMICO, we AFFIRM.

AFFIRMED.

9